FILED

2010 Feb-12  AM 10:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| TIMOTHY J. ROPER, | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| v. | } | Case No.: 2:08-CV-2109-RDP |
| | } | |
| MICHAEL J. ASTRUE, Commissioner | } | |
| of Social Security, | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

Plaintiff Timothy J. Roper brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act ("the Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his applications for a period of disability and Supplemental Security Income ("SSI") benefits. *See* 42 U.S.C. §§ 405(g) and 1383(c). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and the proper legal standards were applied.

## I.        Procedural History

Plaintiff was born August 8, 1959 and has a general education degree. (Tr. 98, 107). Plaintiff was formerly employed as a carpenter for J. D. F. Construction. (Tr. 290). Prior to that, Plaintiff worked a three-year stint as a form carpenter for Brassfield and Goree. (Tr. 291). Plaintiff alleges he has been unable to engage in substantial gainful activity since February 2, 2005 due to his disabling conditions. (Tr. 82, 268). Plaintiff met the insured status requirements to remain covered through September 30, 2009. (Tr. 31, 271).

Plaintiff filed applications for disability and SSI on September 21, 2005.  (Tr. 82-84). Plaintiff's applications were denied initially and also upon review.  (Tr. 48-50, 271-77).  Plaintiff timely filed a request for a hearing before an administrative law judge ("ALJ").  A hearing was scheduled and held on November 5, 2007 before ALJ Cynthia Brown.  (Tr. 53, 283-311).

In her March 25, 2008 decision, the ALJ determined that Plaintiff suffers from severe impairments of status post left rib and left scapula fracture, degenerative disc disease of the lumbar spine, history of back surgery, and bipolar disorder.  (Tr. 22).  However, the ALJ further determined that these impairments, or combination of impairments, do not meet or medically equal one of the listed impairments in the Act.  (Tr. 24).  The ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform light work with the following exceptions:  occasional use of the upper left extremity to push and pull; limited to lifting 20 pounds occasionally and 10 pounds frequently; in an eight-hour work day, can sit for six hours and stand/walk for six hours; is capable of understanding, remembering, and carrying out simple instructions, and should have limited contact with the general public.  (Tr. 25).  Plaintiff's RFC consists of what he can do despite his impairments.

On April 13, 2008, Plaintiff filed a request for a review of the ALJ's decision.  (Tr. 4-6). Plaintiff's request was denied by the Appeals Council on July 8, 2008, and that denial made the ALJ's decision the final decision of the Commissioner and, therefore, a proper subject for this court's review.  (*Id*.).  This action for judicial review was filed by and through counsel on March 18, 2009.  (*See* Pl's Comp.).

Plaintiff was briefly hospitalized in February 2005 at Brookwood Medical Center.  He was diagnosed with alcohol dependence and bipolar disorder.  (Tr. 121-27).  The record is not exactly

clear on why Plaintiff was in the hospital in February 2005, and Plaintiff's own explanation does not reflect what is explained in the medical records. Brookwood Medical Center records state that Plaintiff was found by police naked in his neighborhood shouting that he was hearing the Lord's voice. (Tr. 121-27). Doctor's notes in the record state that on February 2, 2005, Plaintiff was brought by ambulance to the emergency room naked, handcuffed, and in a four-point restraint. (Tr. 126). Plaintiff was then admitted to the psychiatric department and put on alcohol detox protocol. (Tr. 124). Plaintiff checked into the UAB hospital emergency department on February 12, 2005, claiming to have been "beaten up" by Bessemer police in the prior incident. (Tr. 148). Medical records revealed two fractured ribs and a fractured left scapula. (Tr. 147-49).

Throughout the record Plaintiff reports having been hit by a train in February 2005, which resulted in back surgery. (Tr. 187, 196, 292). At the November 2007 hearing, Plaintiff was asked to explain what happened during that incident. Plaintiff testified he was having a psychotic episode at the time, brought on by a fight he had with his stepdaughter. (Tr. 292). He stated that he was hearing voices; "kind of like a battle between good and evil." (*Id.*). Plaintiff said he walked into a train and police took him to the hospital. (*Id.*). Plaintiff asserted no alcohol or drugs were involved in the incident. (*Id.*).

In September 2005 Plaintiff was seen at the Good Samaritan Clinic apparently for pain in his shoulders. (Tr. 187). The chief complaint on the medical records dictate Plaintiff's story of being hit by a train on February 2, 2005, and staying in the hospital for 12 days. (*Id.*). Plaintiff returned to the clinic on October 4, 2005, but was noted as a "no show" for two subsequent appointments. (Tr. 186).

3

On November 2, 2005, Plaintiff was admitted into the Memorial Hospital emergency room after being "sucker punched" in the face at a bar. (Tr. 155-67). Plaintiff reported pain in his left shoulder and elbow. (*Id.*). Plaintiff's scapula was fractured but bones in the elbow where intact. (Tr. 163-64). Mild degenerative changes in the spine were noted, but no acute compression or subluxation was seen. (Tr. 165).

A December 3, 2005 radiology report from Good Samaritan Clinic stated Plaintiff's vertebral body heights were intact, facet arthopathy was present in the lower lumbar spine, transitional segment was present at the lumbosacral junction and no definite acute abnormality was present. (Tr. 185). On December 6, 2005, Plaintiff returned to Good Samaritian Clinic because he had another unspecified accident since an unspecified last shoulder injury. (Tr. 186). An MRI was completed on December 27, 2005 that revealed no evidence of recurrent disc herniation. (Tr. 183). Plaintiff did not show for his next appointment. (Tr. 186).

On March 1, 2006, Plaintiff was admitted to the Cooper Green emergency room after being involved in a motor vehicle accident. (Tr. 201-03). A study of Plaintiff's shoulder showed considerable deformity, secondary to old trauma, with no acute distress, and his right elbow and cervical spine were both negative. (Tr. 205). Plaintiff did not seek medical care again until November 2006 when he was admitted to the Princeton Baptist Health System emergency room with complaints of sharp pains in his lower back. (Tr. 169-75). Plaintiff's radiology report revealed degenerative changes but no acute abnormality. (Tr. 175).

Plaintiff returned to the UAB emergency department June 4, 2007 complaining of pain in his left elbow, left shoulder, and chest. (Tr. 177-81). Findings of a small spur on his elbow were noted, but otherwise no fractures or dislocations. (Tr. 180). Plaintiff's chest study was normal. (Tr. 181).

4

On September 24, 2007, Plaintiff visited Dr. James Blake at Hoover Family Medicine complaining of asthma, chronic bronchitis, high blood pressure, arthritis, gastroesophogeal reflux disease ("GERD"), sleep deprivation, manic depression, chronic back pain, and shoulder pain. (Tr. 194-96). Dr. Blake noted that Plaintiff's untreated manic depression and high blood pressure were his most dangerous diagnosis. (Tr. 196).

On October 1, 2007, Dr. Blake performed a physical capacities evaluation ("PCE"), a clinical assessment of pain, and a clinical assessment of fatigue/weakness on behalf of Plaintiff. (Tr. 189-93). In his PCE, Dr. Blake opined that Plaintiff can be expected to lift five pounds or less occasionally. (Tr. 189). He stated that Plaintiff can sit and stand for one hour during an eight-hour work day. (*Id.*). Dr. Blake also believed that Plaintiff can never perform the following: pushing and pulling movements, climbing, gross manipulation, fine manipulation, bending, stooping, reaching, operate motor vehicles, work around hazardous machinery, dust, allergens or fumes. (*Id.*). In his clinical assessment for pain, Dr. Blake stated his opinion that pain is present in Plaintiff to such an extent as to be distracting to adequate performance of daily work activities, and that physical activity would greatly increase that pain to such a degree as to cause distraction from tasks or total abandonment. (Tr. 190). In his clinical assessment for fatigue/weakness, Dr. Blake stated fatigue/weakness is present to such an extent as to negatively affect adequate performance of daily activities or work. (Tr. 192). He also stated that physical activity would greatly increase fatigue/weakness to such a degree as to cause total abandonment of tasks. (*Id.*). Dr. Blake also opined that the side effects of Plaintiff's medication can be expected to be severe and to limit effectiveness due to distraction, inattention, and drowsiness. (Tr. 193).

On December 28, 2007, Dr. Cynthia A. Neville performed a mental evaluation and a medical source opinion on behalf of Plaintiff. (Tr. 261-65). Dr. Neville opined that Plaintiff suffers from bipolar disorder. (Tr. 265). She stated that Plaintiff's antisocial traits could improve over the next 12 months if he were to engage in consistent outpatient treatment and maintain his sobriety from alcohol. (*Id.*).

## II.    ALJ Decision

Determination of disability under the Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's RFC can meet the physical and mental demands of past work. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and RFC are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that he can no longer perform his former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that he can no longer perform his past employment, "the burden

then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff has not engaged in substantial gainful activity since February 2, 2005, the alleged onset date of disability. (Tr. 22). Although the ALJ determined that Plaintiff has the severe impairments of status post left rib and left scapula fracture, degenerative disc disease of the lumbar spine, history of back surgery, and bipolar disorder, he further determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments of the Act. (Tr. 22-24). The ALJ found that Plaintiff retains the RFC to perform the exertional demands of light work with restrictions of occasional use of his left upper extremity to reach or to push/pull, lifting 20 pounds occasionally and 10 pounds frequently, working six-hours in an eight-hour work day, understanding, remembering, and carrying out simple instructions, and should have limited contact with the general public. (Tr. 25).

A Vocational Expert ("VE"), who was familiar with Plaintiff's background, was present at Plaintiff's hearing and testified that Plaintiff's past relevant work as a carpenter is described by the Department of Labor as heavy and skilled. (Tr. 308). The VE determined Plaintiff would not be able to perform his past work, given his limitations. (Tr. 308-09). The ALJ proposed to the VE a hypothetical individual with Plaintiff's education and work experience who, like Plaintiff, could perform work at the light level of exertion, but could only occasionally use his upper left extremity to push, pull, or to reach. (Tr. 308). The VE stated that the hypothetical individual would be able to find sales jobs or clerical jobs, such as filing, record keeping, entry level auditing, and bookkeeping. (Tr. 309). The ALJ amended the above hypothetical to an individual who is restricted to understanding, remembering, and carrying out simple tasks with limited contact with the general

public.  (*Id.*).  The VE ruled out sales jobs and stated the individual would be able to find positions in light cleaning, assembling, gate tender, and security monitor.  (*Id.*).

### III.    Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the expiration of the period to file objections, reversed with benefits awarded, or in the alternative, Plaintiff requests remand for further consideration.  (Doc. #6 at 11). Plaintiff asserts two reasons why this court should grant the relief sought:  (1) the ALJ did not properly consider the combined effects of Plaintiff's mental and physical impairments, including pain; and (2) the ALJ did not properly apply the pain standard.

### IV.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a

conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.     Discussion

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand and/or reversal.  For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and the proper legal standards were applied.

### A.     The ALJ Properly Considered the Combined Effects of Plaintiff's Impairments

Plaintiff argues that the ALJ did not properly consider the combined effects of his impairments.  Plaintiff asserts he is disabled because of pulmonary and orthopedic impairments, in addition to suffering from mental limitations.  In the ALJ's decision, each of Plaintiff's impairments are listed individually and why each does not meet the criteria of the Act.  (Tr. 24).  The ALJ determined that there is no evidence that Plaintiff's shoulder impairment results in his inability to perform fine and gross movements effectively.  Plaintiff's medical records from different medical sources state that although Plaintiff has degenerative changes in his shoulder, there are no acute abnormalities.  (Tr. 165, 175, 204-05).  Additionally, there is no evidence that Plaintiff's back impairment results in an inability to ambulate effectively.  Plaintiff's December 3, 2005 visit to Good Samaritan Clinic indicates that although he suffers from facet arthopathy in the lower lumbar spine, there is no acute abnormality.  (Tr. 185).  A subsequent MRI was performed which revealed no evidence of recurrent disc herniation.  (Tr. 183).  Similarly, there is no evidence that Plaintiff's mental

impairment restricts him from working.  Dr. Neville noted in her psychiatric evaluation that Plaintiff's impairment was mild and would probably improve with time and medication.  (Tr. 265).

Plaintiff also indicated that the ALJ did not properly consider his asthma and complications from COPD. The ALJ noted that asthma and COPD were first mentioned in July 2007 and diagnosed in September 2007 (Tr. 23, 196, 199-211).  The ALJ correctly observed that Plaintiff was successfully treated with medicine and has required no other significant treatment for these impairments.  Plaintiff testified he has trouble breathing if he walks too fast, but failed to mention any treatment or medication that he receives due to this condition.  (Tr. 297).  Therefore, the objective medical evidence does not support Plaintiff's claim of disabling conditions due to pulmonary complications. Nor does the record support a claim that Plaintiff suffers from a combination of impairments which render him disabled.  On the other hand, the objective medical evidence does support the ALJ's conclusion that Plaintiff does not suffer from a combination of impairments which render him disabled.

### B.    The ALJ Properly Applied the Eleventh Circuit Pain Standard

Plaintiff submits that the ALJ failed to properly apply the Eleventh Circuit Pain Standard and, therefore, failed to properly consider pain as a combination of his impairments.  Plaintiff recited the Eleventh Circuit Pain Standard and submits that the ALJ "did not comply with Social Security's own ruling SSR 96-7p."  (Doc. #10 at 11).  Although Plaintiff alleges error in this respect, he does not point to any alleged deficiencies in the ALJ's decision; he simply has submitted an argument without support or further elaboration as to what error has occurred.  There are several Eleventh Circuit cases which, in sum and substance, indicate that a failure to argue the pain standard issue reflects an abandonment of that issue, which should, in effect, prevent consideration of the ALJ's application

of the pain standard on appeal. *Flanigan's Enterprise, Inc. v. Fulton County*, 242 F.3d 976, 987 n.16 (11th Cir. 2001); *Rowe v. Schreiber*, 139 F.3d 1381, 1382 n.1 (11th Cir. 1998); *N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422, (11th Cir. 1998); *Cont'l Technical Servs. v. Rockwell Int'l Corp.*, 927 F.2d 1198, 1199 (11th Cir. 1991); *Callahan v. Barnhart*, 186 F.Supp. 2d 1219, 1230 n.5 (M.D. Fla. 2002).

Even sidestepping the abandonment issue, this court finds that the ALJ properly applied the Eleventh Circuit Pain Standard. The ALJ determined that although Plaintiff suffers from symptoms which could reasonably produce pain, his claims are inconsistent with the objective medical records. Substantial evidence supports this conclusion. Plaintiff complains of severe back and shoulder pain. However, as mentioned above, Plaintiff has been to several different clinics complaining of back and shoulder pain and received the exact same diagnosis: degenerative changes with no acute abnormality and no evidence of disc herniation. (Tr. 165, 175, 183, 185, 204-05). Treatment notes reflect Plaintiff's complaints of pain, however diagnoses and radiology reports do not support Plaintiff's subjective complaints of disabling pain. Additionally, Plaintiff's lack of treatment from December 2005 until November 2006 tends to refute his claim of disabling pain. Therefore, this court finds no error in the ALJ's application of the pain standard.

## VI.   Conclusion

For the reasons stated above, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum opinion will be entered.

11

**DONE** and **ORDERED** this _____11th_____ day of February, 2010.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE